**TABET et al. v. KAUFMAN.**
No. 9247.

Court of Civil Appeals of Texas.
San Antonio.
Jan. 24, 1934.

H. G. Hart, of Corpus Christi, and Herbert Davis, of San Antonio, for appellants.

John Mobley, Tom Henderson, Jr., and R. B. King, all of Corpus Christi, for appellee.

FLY, Chief Justice.

This is a suit instituted by appellee, Sam Kaufman, against appellants, George Tabet and Joe Tabet, for the dissolution of an alleged partnership between the parties, for an accounting, and also for damages for slanderous words spoken by appellants. The cause was tried by a jury to whom special issues were submitted, and upon the answers thereto judgment was rendered against George Tabet for the sum of $2,000, and against Joe Tabet for the sum of $250, and that appellee take nothing by his suit against appellants on the issue of partnership.

Fourteen issues were submitted to the jury, and in answer thereto they found that no partnership existed between appellants and appellee, that George Tabet accused appellee of theft of money, and that appellee was damaged thereby in the sum of $2,000, that the statement made by Joe Tabet that appellee was a crook was false, and that appellee was damaged by such language in the sum of $250.

The first proposition complains of the reading by appellee's counsel, during his closing argument to the jury, the well-known poem of Lord Byron, beginning with the words:

"The Assyrian came down like the wolf on
the fold,
And his cohorts were gleaming in purple and
gold,"
—and ending up with the tragic declaration:
"And the might of the Gentile, unsmote by
the sword,
Hath melted like snow in the glance of the
Lord!"

The poem, of course, is founded on the scriptural account of the invasion by Sennacherib and his investment by his Assyrian forces of the city of Jerusalem and the destruction wrought upon them by the hand of the Lord. This poetry, backed as it is with sacred writings, is claimed by appellants to have aroused prejudice and passion in the hearts of the jury because appellants were Assyrians and appellee was a Jew. It seems to be a long cry from the battle field on the plains of Judea, over 3,000 years ago, down to this year of our Lord nineteen hundred and thirty-four, but appellants are so earnest in their feeling that this has aroused the passions of centuries ago existing between Assyrian and Jew that fifty or more pages of the typewritten brief are devoted to the discussion of the subject. It would seem improbable, if not impossible, for prejudice to have been aroused by Lord Byron's poetry, which detailed in verse what the Bible had written in prose, and we think there is no foundation in the claim of passion or prejudice arising from this argument. However, had the poetry been as objectionable and as powerful in its effect as is argued by appellants, the record fails to indicate that any objection was urged to the argument or exception taken to it at the time the trial was in progress. The record does not indicate that the court had been informed as to the possible grievous effect of this little ballad which had been read to the jury without objection, until it was set forth in a motion for new trial. There is not even a word in the record indicating that the argument was made, and we may infer that the poetry was never read, from the silence of the record to indicate that it had been read. Lord Byron, as imaginative and romantic as he was, could never have dreamed that the poem of his, written about events over 3,000 years old, could have had the effect of arousing prejudices and ill will between Assyrians and Jews on the far-off coast of a state in the American Union.

The second proposition complains of oth-

er argument as being unsupported by the evidence. If such argument was ever made, the record fails to disclose it, and there is no foundation in the record to sustain the second proposition, and it is overruled.

The evidence described as "newly discovered" in the motion for new trial does not, under the facts found in the record, prove to have been newly discovered. The witness from whom it was stated the newly discovered evidence would be obtained was on the witness stand, and no reason is assigned for the failure to obtain the evidence from her at the time she was testifying. The record fails to show any degree of diligence on the part of appellants to obtain the testimony, and, the granting or refusal of a motion for new trial on the ground of newly discovered testimony being largely discretionary with the trial court, the ruling of that court will not be disturbed in the absence of the abuse of discretion appearing from the record. The third proposition is overruled.

The fourth and fifth propositions are overruled. There was no material variance between the allegations in the petition and the testimony given as to the speaking of the slanderous words. Proof that the words were spoken to one or more persons constituted slander, and would form a basis for the claim of damages.

The sixth and seventh propositions are overruled. The charge of theft made by George Tabet in the presence of an employee of his was not a privileged communication, and the testimony showed that Tabet had circulated the charge of theft against appellee to a number of persons, and was not invited by appellee. It could not be considered an invitation to a man to make the charge of theft to ask him why he had treated one with so little consideration for the space of a few days.

The eighth proposition is overruled. This court has failed to discover any evidence of prejudice or malice against appellants, and does not discover any excess in the verdict.

The ninth proposition is overruled. The evidence was sufficient to sustain the verdict of the jury and the judgment of the court.

There was no evidence to sustain the charge of crookedness against appellee, as was found by the jury, and the court did not err in refusing to submit the special is-

sue No. 5, requested by appellant, Joe Tabet. He admitted that he had charged appellee with being a crook, and he failed to establish the truth of that charge. The tenth and eleventh propositions are accordingly overruled.

The twelfth and thirteenth propositions are without merit, and are not founded on the facts in the case. They are overruled.

The judgment is affirmed.